IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# MIDDLE DIVISION.

NASHVILLE,.....................DECEMBER TERM, 1872.

MACON AND SMITH COUNTIES *v.* TROUSDALE COUNTY.

NEW COUNTIES. *Mode of measurement. Straight line rule adopted. Article 10, Sec. 4 of the Constitution, and ch. 27 of Act of Second Session of 1869-70, passed June 21, construed.* Where new counties are established, the straight line rule is adopted as the mode of laying them off, and ascertaining their proper measurements.

2. SAME. *Same.* The act of the Legislature, so far as it merely established the county of Trousdale, is valid; but so far as by the boundaries prescribed it has entrenched upon the counties of Macon and Smith, lessening their constitutional area, it is void.

Cases cited: Barron Martin's opinion in the case of Monflet *v.* Cole, determined in the English Court of Exchequer, is adopted by the Court. Many authorities are cited.

---

FROM MACON.

---

Appeal from the Chancery Court. W. D. GOOD-PASTURE, Chancellor.

JOHN W. HEAD & SONS for Trousdale County.

M. N. ALEXANDER for Macon County.

TURNEY, J., delivered the opinion of the Court.

Article 10, § 4, of the Constitution of the State ordains:

"New counties may be established by the Legislature," etc. After a general proviso there is, among exceptions, the following: "New counties may be established by the present or any succeeding Legislature, out of the following territory." . . . "Out of fractions of Sumner, Macon and Smith. Counties, but no new line of such new county shall approach the Court-house of Sumner or Smith Counties nearer than ten miles, nor include any part of Macon County lying within nine and a half miles of the Court-house of said county, nor shall more than twenty square miles of Macon County, nor any part of Sumner County lying due west of the western boundary of Macon County be taken in the formation of said new county."

On June 21, 1870, the Legislature passed an Act establishing the county of Trousdale out of fractions of the counties of Sumner, Macon, Smith and Wilson, around the town of Hartsville, defining the boundaries. Ch. 27, Acts of Second Session 1869–70.

It is insisted this creating statute violates the clause of the Constitution already quoted, in taking more of the territory of Smith and Macon Counties than is granted.

In discussing and determining the question we are

to be understood, as treating it as a political question, and not as one growing out of contracts between individuals. We are restricted to public policy, tested by the times in which we live. With the restriction indicated, as the reasoning is sound and the authorities conclusive, we quote and adopt the opinion of Baron Martin, in the case of *Monflet* v. *Cole*, determined in the English Court of Exchequer, in November, 1871, as follows:

"The question in this case is, in its terms, very simple. The plaintiff had bought from the defendant a public house called "The Lord Holland," and the defendant covenanted that he would not carry on the business of a publican within the distance of one half-mile of the premises called "The Lord Holland," and the question is, how the distance of half a mile is to be measured. The plaintiff contends that the true mode of measurement, that is, the true construction of the language used, is that a circle of half a mile radius is to be drawn round The Lord Holland, and that if the defendant carries on the business of a publican within this space, then he has broken the covenant. The defendant, on the other hand, contends that the true construction of the covenant is, that if there be a half mile between The Lord Holland and the house where the defendant carries on business, measured by the nearest way of access, there is no breach of the covenant.

Now if the question were new and had never before arisen, I think the plaintiff's contention is right.

Every written document is to be construed according to the ordinary natural and grammatical meaning of the language used, and when a man covenants that he will not do an act within a certain distance of a given spot, it seems to me that the true mode of determining the distance is to describe a circle with a radius of the distance around the spot, and that if the act be done within this circumscribed distance, the covenant is broken, and that it is an unnatural and unreasonable construction to say that the distance is to be measured by the *then existing way of access.* Supposing The Lord Holland was on the bank of a river fifty yards wide, and that the bridge across the river was upwards of a quarter of a mile from The Lord Holland, this construction of the covenant would enable the covenantor to set up a public house on the opposite bank within fifty yards of The Lord Holland. This, as it seems to me, would be in direct contravention both of the words and spirit of the covenant.

Again, supposing that by the existing mode of access the distance was upwards of half a mile, but by a new road the distance was reduced to less than a half mile, there would be no breach of the covenant until the new road was made, but there would be afterwards. I can not but think such a construction of the covenant would be unreasonable, giving it one operation in one state of things, and another in another; and if I had to decide the question independently of all authority, I would be of opinion

that the plaintiff's construction of the covenant would be the true one, and the more consistent with reason and certainty.

But in my judgment the authorities are conclusive. Passing over for the present the case of *Wing* v. *Earl*, the first case in order of time is *Wood* v. *Dennett*, and there Lord Ellenborough expressed his opinion at Nisi Prius that the nearest way of access was the proper mode of measurement. The next case was *Leigh* v. *Hind*. The covenant there was, that the defendant would not carry on the business of a victualler within the distance of half a mile of the premises assigned, a public house in Bishopgate street, in London. It was found by an arbitrator that the defendant carried on the business of victualler within half a mile by the nearest way of access, and of necessity within the radius of a half mile, and the unanimous judgment of the Court was that the covenant was broken, but Lord Tenterdon and Mr. Justice Littledale stated their opinion to be that the distance was to be measured by the nearest way of access, and Mr. Justice Littledale stated that if this covenantor took a public house, the distance of which by the then shortest way of access, was greater than the half mile, there would be no breach of covenant, but if a new street were opened, whereby the distance became less than a half mile, there would be a breach. On the other hand, Mr. Justice James Parke declares his dissent from this construction, and said he was of opinion that the proper mode of measuring the dis-

tance was by taking a straight line from house to house, or, as he expresses it, as the crow flies. He referred to the case of *Wood* v. *Dennett*, and there is no mistake or misunderstanding as to his opinion. Now these opinions were not necessary for the decision of the case; but they were the opinions of three of the most eminent Judges of modern times, and the present question is, which of them have been adopted in subsequent judgments. The question next arises in *Reg* v. *Inhabitants of Sappon . Walden;* that decision was upon an enactment that no person should retain a settlement in a parish for any further time than he should inhabit within ten miles thereof. The case of *Leigh* v. *Hind* was cited; Lord Denman said the most reasonable rule was that approved of by Mr. Justice Parke, namely, a measurement by a direct line. He added, this would avoid the practical difficulty of a settlement being good one day and bad the next, or that there should be no breach one day and a breach the next. The next case is *Stokes* v. *Grissell.* The question there was, whether the plaintiff dwelt more than twenty miles from the defendant. Jarvis, C. J., stated his opinion to be that the proper measurement was on the horizontal plane from point to point, and not by road. Mr. Justice Maule stated that he agreed with Mr. Justice Parke in *Leigh* v. *Hind*, and that in his opinion, the proper mode of measuring was on a straight line from point to point, and that upon the question he entertained no doubt at all.

The next case is *Lake* v. *Butler*. The question was

whether the plaintiff dwelt more than twenty miles from the defendant, and Lord Campbell, Mr. Justice Earl and Mr. Justice Compton, expressed a clear opinion that the straight line and not the nearest way of access was the true mode of measurement. The next case is *Jewel* v. *Stead.* The question then arose upon an enactment that no toll-gate should be erected within three miles of another toll-gate called Bargate. The toll-gate was by the road more than three miles from Bargate, but by the straight line, less. Now here it might have been plausibly argued that the object of the Legislature was to protect the traveler from a second toll until he had traveled three miles of road, and that when he had traveled three miles the Legislature did not intend to prohibit a second toll, but the Court of Queen's Bench held that the straight line was the true measurement. These are the authorities in the courts of law, but there is a case in equity directly in point to the same effect—*Dingman* v. *Walker.* An attorney had covenanted not to carry on business within seven miles from the plaintiff's office, the question was raised, nearest way of access or straight line—and the present Lord Chancellor decided, apparently without doubt or difficulty, that the distance was to be measured in a straight line on a horizontal plane.

There was another case cited, *Wing* v. *Earl.* The defendant had sold the plaintiff wood, which was to be gotten four miles from Rye, in Sussex. The defendant pleaded that the wood, by the nearest and

usual highway, was four miles from Rye. The Court gave judgment for the plaintiff. Mr. Justice Fenner said that if the question had been upon a statute, the miles should be construed according to the usual way for carriages, but upon the condition which is the same as a covenant or contract, if it be in four miles in any way, the condition—in other words, the contract or covenant, is broken; this is in favor of plaintiff's contention." "My opinion is that the construction put upon the covenant by Mr. Justice Maule, is the correct one. All the subsequent authorities, without exception, adopt it; there is no authority to the contrary—at least none has been cited by the learned counsel for the defendant.

It was said that one construction was to be given to these words in an act of parliament, and another in a deed or contract. I should be very loth to do so. It may be that circumstances may exist in a peculiar case to justify such construction, but in my opinion there is nothing in this calling for it.

It was also stated that the measurement of straight line, as stated in some of the judgments, is not practicable.

"I have inquired as to this from one of the most competent persons in this kingdom, and have been informed that it may be easily measured with sufficient correctness for all practical purposes, by means of the Ordinance map."

We have cited, almost entire, the opinion of the Court in the case quoted, in order to give to the

profession all the authorities upon the question, *pro and con,* which have been collected at great labor, and for which the opinion is mainly valuable.

The question is a new one in this country, made perhaps for the first time in this case.

From the opinion quoted Cleasby, B., dissented. Taking the opinion of the Court and tempering it with the dissenting opinion, we think it peculiarly applicable to the case at bar.

The dissenting opinion takes a distinction, (for which many good reasons may be given,) between an act of parliament and an agreement between private parties. In criticising the cases cited, Cleasby, B., says: "In *Stokes* v. *Grissell* which was pressed on behalf of defendant, the question was, how the distance of twenty miles, mentioned in an act of parliament, was to be measured, and the case has no bearing upon the construction of an agreement like the present, when the subject-matter and intention of the parties must be considered."

In commenting on *Lake* v. *Butler,* he says: "The question was the same as in *Stokes* v. *Grissell,* viz., the measurement of twenty miles mentioned in 9 and 10 Vic. c. 95, and the Court adopted the view expressed in the former case; but there is nothing in the judgment indicating an opinion in favor of the straight line rule, in such a case as the present."

In noticing *Jewel* v. *Stead,* he says: "The question arose upon a turnpike act, which provided that no toll-gate should be erected within three miles of

another toll-gate, and all that was decided was that the general rule should be adhered to, that when in an act of parliament, distance is mentioned, generally without any other guide, the straight line rule is to be adopted. This is one of the cases in which Lord Campbell says that the distance is to be measured by a straight line on the horizontal plane. This measurement of distance on a horizontal plane is a proper mode of measurement, when you are laying down an arbitrary rule to determine whether a particular case comes within an act of parliament or not, there being no question of conduct and of liability by reason thereof; but when the whole question arises upon the conduct of the parties, such a rule, it is submitted, is wholly inapplicable," etc.

From these extracts we see there was no difference in opinion in the application of the straight line rule in the construction of acts of parliament, and that the whole difference is in applying it to contracts between individuals.

We are called upon to construe a provision of the Constitution, and to that we distinctly confine ourselves, adopting the straight line rule, intimating no opinion as to what should be the rule in contracts or agreements between persons.

We may add to the reasons contained in the authorities that the term " miles " used in the Constitution, derives some aid in the interpretation we have given from the term " square miles " used in the same instrument, the latter meaning an area which can

only be ascertained by the straight line measurement, and we infer the use of the two terms in the same instrument and same clause of the instrument must have an affinity of meaning.

Our conclusion is the more satisfactory in the fact of the spirit of improvement which prevails, developing each day turnpikes and railroads by which mountains are tunneled, hills leveled and low places raised, thereby shortening distances in every quarter with constantly increasing improvements in that direction, making the only safe and always certain and unchanging rule of measurement, the air line.

The act of the Legislature, so far as it merely established the county of Trousdale, is valid, but so far as by the boundaries prescribed it has entrenched upon the counties of Macon and Smith, lessening their constitutional area, it is void.

The causes will be remanded to their respective Chancery Courts, whence they come, that surveys may be made in accordance with the rule laid down in this opinion.